## THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ACCUWEATHER SALES AND SERVICE, LLC,<br>a Pennsylvania Corporation<br>385 Science Park Road<br>State College, PA 16803<br><br>VIGNESH VISWANAT NATRAJ,<br>a Pennsylvania Resident<br><br>     *Plaintiffs*,<br><br><br><br>UNITED STATES DEPARTMENT OF<br>HOMELAND SECURITY;<br>245 Murray Ln. SW<br>Washington, DC 20528,<br><br>KEVIN K. MCALEENAN, in his official<br>capacity as United States Secretary of Homeland<br>Security;<br>245 Murray Ln. SW<br>Washington, DC 20528,<br><br>UNITED STATES CITIZENSHIP AND<br>IMMIGRATION SERVICES ("USCIS"),<br>20 Massachusetts Ave NW<br>Washington, DC 20529<br><br>KENNETH T. CUCCINELLI, in his official<br>capacity as Director of the United States<br>Citizenship and Immigration Services,<br>20 Massachusetts Ave NW<br>Washington, DC 20529<br><br>LAURA B. ZUCHOWSKI, in her official<br>capacity as Director, USCIS Vermont Service<br>Center<br>30 Houghton Street<br>St. Albans, VT 05478-2399<br>     *Defendants*. | Case No. |

## COMPLAINT FOR DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. §2201 et seq. AND JUDICIAL REVIEW UNDER THE ADMINISTRATIVE PROCEDURE ACT (APA) 5 U.S.C. §701, et seq.

Plaintiffs, by and through their undersigned attorneys, commence this action against the above-named Defendants, and respectfully state as follows:

## PRELIMINARY STATEMENT

1.       This is an action for Declaratory Judgment and Judicial Review under The Declaratory Judgment Act, 28 U.S.C. § 2201, et seq. and the Administrative Procedure Act ("APA") 5 U.S.C. § 701, et seq.

2.       Simply stated, the purpose of the governing regulations for H-1B high-skilled visas is to ensure that employers do the right thing by their employees and pay their employees no less than what American employees would be paid to do the same job.

3.       In the instant case, Defendants have erroneously denied an H-1B visa for an incredibly skilled individual to provide critical services for AccuWeather despite the fact AccuWeather over-complied with the law, by indicating at it was intending to pay its employee more than the law required.

4.       Moreover, Defendants have denied this H-1B visa in an incredibly inconsistent manner, having first granted the petition before denying it.

5.       Upon review of the facts and the governing law of this case, it should become incredibly apparent that this is not a case that should lead to a visa denial and the deportation of a very talented individual out of the United States.

6.       In 2019, Plaintiff AccuWeather Sales and Service, LLC ("AccuWeather") petitioned to permit Plaintiff, Mr. Vignesh Viswanat Natraj—a Master's Degree recipient in Business Administration from the University of Notre Dame Mendoza College of Business—to obtain an H-1B employment-based, high-skilled, non-immigrant visa to legally stay and be employed in the United States as an Associate Product Manager under Section 101(a)(15)(H)(i)(b) of the Immigration and Nationality Act ("INA") and 8 C.F.R. § 248.3(a) for the period between October 1, 2019 and September 1, 2022.

7.       As part of Plaintiffs' petition, Plaintiffs identified that Mr. Natraj would perform his work in State College, PA—where the prevailing wage for individuals performing his occupation is listed as $60,445.00 per year by the Department of Labor.

8.       AccuWeather attested to the Department of Labor that even though Mr. Natraj could be paid **$60,445.00** per year in accordance with the law, that he would nevertheless be paid **$82,500 per year** and that his job duties would be performed in State College, PA.

9.       In the same Department of Labor attestation, AccuWeather was also asked to "identify all intended places of employment, including those of short duration," on the form.  No definition of "short duration" is provided on either the Department of Labor Form itself or in the governing regulations. *See* 20 CFR § 655.730.

10.       Consequently, because AccuWeather also has an office in New York City, and AccuWeather could not foreclose the remote possibility that perhaps Mr. Natraj might have to travel to NY for at least 1-day during the next 3-years—AccuWeather decided (out of an abundance of caution) simply to list New York, NY as a potential secondary work site, and promised to pay Mr. Natraj an additional salary (commensurate to a pro-rata daily rate of $95,500/year) for any day that he would be in NY (although no such days were contemplated).

11.       AccuWeather's over-disclosure and agreement to pay an increased salary for any theoretical business trip to NY is not required under the law, *see* 20 C.F.R. § 655.715, but was something that AccuWeather chose to do in the spirit of over-compliance with the legal duties of an H-1B employer.

12.       Defendant U.S. Citizenship and Immigration Services ("USCIS") nevertheless denied Plaintiffs' application.  It misguidedly stated that because AccuWeather disclosed New York as a potential theoretical site of "short duration," this created a "gotcha" situation which required AccuWeather to pay Mr. Natraj the amount of $95,500/year as the prevailing wage in New York, NY—even though all of the record evidence stated that Mr. Natraj was not going to be working in New York for even a single day.

13.     In addition to the legal error underpinning Defendant's decision, the decision was also made in a procedurally irregular manner.  USCIS had already indicated that the petition had been granted before unexpectedly sending out a denial decision to the Defendants.  Plaintiffs had already relied upon the email decision stating that their petition had been granted only to unexpectedly have to change all of their plans one week later upon receiving a conflicting decision letter.

14.     All of the foregoing claims are based upon the inappropriate  agency action of denying the I-129 petition for Mr. Natraj's H-1B status for no legitimate reason, and for causing Mr. Natraj to be out of status beginning on October 22, 2019, by denying his petition.

15.     Plaintiffs, as applicants for Mr. Natraj's H-1B status (I-129), are suing Defendants in their official capacity.

16.     As a result of the misguided action that is not based on the law of the aforementioned Defendants, Plaintiffs suffered a legal wrong and are adversely affected within the meaning of the INA.

**PARTIES**

17.     Plaintiff, AccuWeather Sales and Service LLC, is a Pennsylvania corporation with offices in State College, PA, and is a leading American media company that provides commercial weather forecasting services worldwide.  AccuWeather markets weather products and services, with clients worldwide in media, business and government, including 245 of the Fortune companies and thousands of other businesses.

18.     Plaintiff, Vignesh Viswanat Natraj, is a citizen of India who resides in Pennsylvania. He was lawfully employed by AccuWeather in State College, Pennsylvania as an F-1 Associate Product Manager on Optional Practical Training (OPT) status from June 2018 who was authorized to live and work in the United States from June 2018 to September 2019, and was

seeking a change to H-1B visa status to continue working for AccuWeather for the period between October 2019 and September 2022.

19.     Defendant, Department of Homeland Security ("DHS") is a federal agency responsible for administering the laws of Congress as to the approval or denial of immigration benefits under the INA and is the parent agency of U.S. Citizenship and Immigration Services.

20.     Defendant, U.S. Citizenship and Immigration Services, is an agency of the federal government within the Department of Homeland Security and is responsible for the administration of laws and statutes governing immigration and naturalization and the adjudication of petitions for immigration and nonimmigrant benefits, including petitions for nonimmigrant workers and petitions for change of status.

21.     Defendant, Kevin K. McAleenan, is the Secretary of the United States Department of Homeland Security ("DHS"), with responsibility for the administration of applicable laws and statutes governing immigration and naturalization.  He is generally charged with enforcement of the Immigration and Nationality Act and is further authorized to delegate such powers and authority to subordinate employees of DHS.  More specifically, the Secretary is responsible for the adjudication of petitions for nonimmigrant workers and petitions for change of status.

22.     Defendant, Kenneth T. Cuccinelli, is the Director of U.S. Citizenship and Immigration Services, and is responsible for the administration of immigration and naturalization adjudication functions and establishing immigration services policies and priorities. These functions include adjudication of petitions for nonimmigrant workers and petitions for change of status.

23.     Defendant Laura B. Zuchowski, is the Director of the USCIS Vermont Service Center ("VSC") and is a federal officer acting within the parameters of her authority as the VSC's decision maker concerning all petitions and applications for immigration benefits. In her individual capacity, Defendant Zuchowski was responsible for ensuring that Plaintiff Natraj's I-129 application for change of status to H-IB would be adjudicated according to the statutes and regulations of the

United States.

## **JURISDICTION AND VENUE**

**24.**     This court has jurisdiction of this action pursuant to 28 U.S.C. § 2201, *et seq*., 28

U.S.C. § 1331, and 5 U.S.C. 701 and 702 *et seq.*, and this action is timely under 28 U.S.C. § 2401.

Relief is requested pursuant to said statutes.   Specifically, this Court has jurisdiction over this

action pursuant to 28 U.S.C. § 1331, which provides that "district courts shall have original

jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United

States." Further, the Declaratory Judgment Act, 28 U.S.C. § 2201, provides that: "[i]n a case of

actual controversy within its jurisdiction ... any court of the United States, upon the filing of an

appropriate pleading, may declare the rights and other legal relations of any interested party

seeking such declaration, whether or not further relief is or could be sought." Review is also

warranted and relief sought under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701,

702 et seq., and § 706(1).

**25.**     Venue properly lies within this district pursuant to 28 U.S.C. § 1391(e), in that

this is an action against officers and agencies of the United States in their official capacities,

brought in the District where the Defendants reside.

## **STANDING**

**26.**     AccuWeather Sales and Service LLC has a legally protected interest in a decision

by the Defendants on its H-1B petition on Mr. Natraj's behalf which is not arbitrary and capricious,

nor an abuse of discretion, and which is in accordance with law, per 5 U.S.C. § 706(2).   The

invasion of this right has caused AccuWeather concrete and particularized injury in that, as a result

of this invasion, AccuWeather can no longer employ Mr. Natraj's expert services and so cannot

derive the expertise and revenue it previously received from the use of his services.   In addition,

there is a causal connection between the injury-in-fact and the Defendants' challenged behavior

in that it is precisely the Defendants' denial of Mr. Natraj's application for change of status which

prevents him from working for AccuWeather and it is certain that the injury-in-fact will be redressed by a favorable ruling in that such a ruling will enable AccuWeather to employ Mr. Natraj again and so once more derive revenues from his services. Accordingly, AccuWeather has standing to bring this action. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

27.     Mr. Natraj likewise has a legally protected interest in a decision by the USCIS on AccuWeather's petition on his behalf which is not arbitrary and capricious, nor an abuse of discretion, and which is in accordance with law, per 5 U.S.C. § 706(2), and this right has been violated because of the improper denial of his application for change of status.  The violation of this right has caused him concrete and particularized injury in that, as a result of this violation, he can no longer be employed by AccuWeather and so cannot derive the revenue he previously received from his employment. In addition, his presence in the United States has been rendered unlawful.  Moreover, there is a causal connection between the injury-in-fact and the Defendants' challenged behavior in that it is precisely the Defendants' denial of Mr. Natraj's application for change of status which prevents him from working for AccuWeather and it is certain that the injury-in-fact will be redressed by a favorable ruling in that such a ruling will enable AccuWeather to employ Mr. Natraj again and so enable him to support himself and lawfully remain in the United States. Further, AccuWeather wishes to employ Mr. Natraj in the offered position. Accordingly, Mr. Natraj has standing to bring this action. *See Lujan*, *supra*.

## EXHAUSTION OF REMEDIES

28.     Plaintiffs have exhausted their administrative remedies. The denial of the Plaintiffs' petition requesting a change of status for Mr. Natraj constitutes a final administrative action for which there is no administrative appeal, which is clearly stated in the denial notice itself.

**FACTS**

29.     Plaintiff Vignesh Natraj is the quintessential example of the merit-based, high-skilled, immigration that policy-makers seek to encourage into the United States.  He has a Bachelor of Engineering, Telecommunication from the Visvesvaraya Technological University in Bangalore, India, where he graduated with Distinction.  He then obtained a student visa in 2016 to come to the United States and obtain a Master's of Business Administration from the University of Notre Dame.  At Notre Dame, he was the Chief Technology Officer of the Business Analytics Club and he graduated with a 3.6 Grade Point Average.  *See* Ex. 1 (H-1B Petition Filed by AccuWeather for Vignesh Natraj) at pp 47-56.

30.     After graduating with his M.B.A., Mr. Natraj took a job with Plaintiff AccuWeather Sales and Services LLC as an Associate Product Manager at its office in State College, PA.  He was first able to work for AccuWeather pursuant to a twelve-month optional practical training program for nonimmigrant foreign nationals admitted into the United States with an F-1 student visa who graduate with a degree from a U.S. university.  *See* 8 CFR § 214.2(f)(10)(ii).  *See* Ex. 1 at pp, 44, 66, 84-86.

31.     For context, an Associate Product Manager at AccuWeather conducts market research, proposes product prototypes, tests the products, coordinates design and engineering efforts, and markets the final version of the product.  It is a very sophisticated and complicated "mini-CEO" job that requires business analytics, forecasting analytics, process analytics, and data analytics as well as a background in science and engineering. *See* Ex. 1 at pp. 44-46, 96-101.

32.     As Mr. Natraj was performing his job with impressive success, AccuWeather petitioned for Mr. Natraj to change his status from F-1 to H-1B on April 11, 2019.  If the petition is granted, Mr. Natraj will be able to work for AccuWeather in State College, PA from October 1, 2019 to September 2022. *See* Ex. 1.

33.     As part of filing the H-1B petition, AccuWeather was required to fill out a Labor Condition Application (LCA).  *See* 20 CFR 655.715.  As explained by the Congressional Research

Service, in an LCA: "the employer must attest that the firm will pay the nonimmigrant the greater of the actual wages paid to other employees in the same job or the prevailing wages for that occupation, that the firm will provide working conditions for the nonimmigrant that do not cause the working conditions of the other employees to be adversely affected, and that there is no applicable strike or lockout." *See* Ruth Ellen Wasem, *Temporary Professional, Managerial, and Skilled Foreign Workers: Policy and Trends*, Congressional Research Service (Jan. 13, 2016) at p.7, *available at* https://fas.org/sgp/crs/homesec/R43735.pdf

**34.**     In the LCA for Mr. Natraj's H-1B petition filed by AccuWeather, it was established that the prevailing wage for Mr. Natraj's occupation in State College, PA was $60,445. *See* Ex. 1 at pp. 88-94.

**35.**     AccuWeather was, therefore, only legally required to pay Mr. Natraj $60,445, but nevertheless agreed to pay Mr. Natraj $82,500.  *See* Ex. 1.

**36.**     During this process of filling out the LCA, Section F of the LCA stated that "[t]he employer must identify all intended places of employment, **including those of short duration**, on the LCA." *See* Ex. 1 at p.90.

**37.**     It cannot be disputed that the term "**short duration**" is not defined anywhere in the LCA form itself— or in the regulation cited in the LCA. *See* 20 C.F.R. § 655.730, *see also* Ex. 1.

**38.**     Given that: a) there was no definition given for "short duration" provided by the Government; b) AccuWeather maintains an office in New York, NY; and c) AccuWeather could not foreclose the remote possibility that perhaps Mr. Natraj might have to travel to NY for at least one day during the next three years—AccuWeather decided (out of an abundance of caution) to list New York, NY as a potential secondary work site on the LCA.

**39.**     In addition, AccuWeather promised to pay Mr. Natraj an additional salary (commensurate to a pro-rata daily rate of $95,500/year) for any theoretical day that he would be in NY.  This is not even required under the law, but it is something that AccuWeather chose to do in the spirit of over-compliance with the legal duties of an H-1B employer.

**40.**      On May 22, 2019, USCIS sent Plaintiffs a Request for Evidence (RFE) stating

the following:

> Prior to filing an H-IB petition with USCIS, employers must submit ETA Form 9035, Labor C Application (LCA) to the Department of Labor (DOL) attesting to compliance with the require 212(n)(l)(A) of the Act. After obtaining certification of the LCA from DOL, the employer the certified LCA with the H-1B petition to USCIS.

> The LCA submitted with your H-IB petition, Case Number I-200-196064-436109, states in Part F, Item 10 that you will pay the beneficiary a wage rate of $82,500. Part F, Item 11 of the LCA states that the prevailing wage is $95,098 for the beneficiary's second place of employment at 12 E 49th St, New York, NY 10017. The LCA is certified for a full-time position.  In Part 5 of Form I-129, you state that the position is full-time and the beneficiary will be paid $82,500 and then a rate of $95,500.   However, the beneficiary's wage must be that of the highest prevailing wage of any location that the beneficiary will be performing services. Provide documentary evidence to overcome this issue.

> Since you have attested to different wage information on the LCA than what you have stated on Form I-129, it is not evident that you are offering and will offer H-1B wages in compliance with the LCA submitted in support of your H-1B petition as required by sections 101(a)(15)(H)(i)(b) and 212(n)(l)(A) of the Act.

> Please submit evidence that the beneficiary will be paid wages that are at least the prevailing wage or the actual wage, if greater, as indicated on the LCA.

*See* Ex. 2 at pp. 1-8.

**41.**      The RFE appeared to be under the mistaken impression that Mr. Natraj would be paid less than the prevailing wage because AccuWeather prophylactically listed New York, NY as a second work-site in the LCA—but then stated in the I-129 that Petitioner would be paying the Beneficiary the $82,500 yearly salary listed for State College, PA (which is where Mr. Natraj performs 100% of his work duties).   *See* Ex. 2.

**42.**      In response to the RFE, AccuWeather then provided the affidavit of Leslye Garlin, Senior Talent Acquisition Specialist at AccuWeather, which explained under oath, that the listing of New York as a secondary work site on Mr. Natraj's LCA was done solely because there was no clarity given by DOL as to which worksites should be listed.  *See* Ex. 2 at pp 174-177.

**43.**      The affidavit further explained, under oath, that the beneficiary, Vignesh Viswanat Natraj, has been and will continue to be employed entirely at AccuWeather's State College, Pennsylvania location. *See id*. The affidavit made it crystal clear that New York, NY was

only listed as a secondary office out of an abundance of caution. The affidavit concluded by

swearing under oath that "Should Mr. Natraj ever decide to move to New York, a new LCA and

I-129 will be filed for that purpose and will be required to be approved **before he is allowed to**

**work a single day in New York**." (emphasis added). *See id.*

44.    As such, it was clear on the basis of the record evidence that Mr. Natraj would

not be working in New York and would indeed be receiving $82,500 for work that is exclusively

performed in State College, PA—far more than the prevailing wage for this occupation in State

College, PA.

45.    Moreover, AccuWeather's actions in this case were exactly what is contemplated

by 20 CFR 655.715 – which states that:

> (4) Whenever an H-1B worker performs work at a location which is not a
> "worksite" (under the criterion in paragraph (1)(i) or (1)(ii) of this definition), that
> worker's "place of employment" or "worksite" for purposes of H-1B obligations is
> the worker's home station or regular work location. The employer's obligations
> regarding notice, prevailing wage and working conditions are focused on the home
> station "place of employment" rather than on the above-described location(s)
> which do not constitute worksite(s) for these purposes. However, whether or not a
> location is considered to be a "worksite"/"place of employment" for an H-1B
> nonimmigrant, the employer is required to provide reimbursement to the H-1B
> nonimmigrant for expenses incurred in traveling to that location on the employer's
> business, since such expenses are considered to be ordinary business expenses of
> employers (§§655.731(c)(7)(iii)(C); 655.731(c)(9)).

In other words, AccuWeather did not even have to list New York, NY as a secondary work site in

its LCA for Mr. Natraj. It simply needed to pay Mr. Natraj's travel expenses for any trip to NY

required by his job.

46.    AccuWeather actually agreed to do more than what is required, it actually agreed

to pay Mr. Natraj a New York salary for any day that he might have been in New York.

47.    Consequently, the law required Plaintiffs' H-1B Petition to be approved.

48.    And, as such, on Friday, August 23, 2019 at 1:30AM, Plaintiffs' counsel received

an email from USCIS stating that "We approved your Form I129, PETITION FOR A

NONIMMIGRANT WORKER, Receipt Number EAC1915450413, and emailed you an approval

notice. Please follow any instructions on the approval notice. If you move, go to www.uscis.gov/addresschange to give us your new mailing address." *See* Ex. 3

49.     But then, on August 30, 2019, Plaintiffs inexplicably received a denial decision stating only that "[s]ince you have attested to different wage information on the LCA than what you have stated on Form I-129, it is not evident that you are offering and will offer H-1B wages in compliance with the LCA submitted in support of your H-1B petition as required by sections 101(a)(15)(H)(i)(b) and 212(n)(1)(A) of the Act." *See* Ex. 4.

50.     No discussion was provided about Ms. Garlin's affidavit which explicitly stated, under penalty of perjury, that no work would be done in New York, such that Mr. Natraj would be receiving a salary in State College, PA—for work performed exclusively in State College, PA—that was over $22,000 and over 36% higher than the prevailing wage for that occupation.

51.     There was simply no factual basis to support the Defendants' conclusion that "it is not evident that you are offering and will offer H-1B wages in compliance with the LCA submitted in support of your H-1B petition." *See* Ex. 4.

52.     In the end, AccuWeather was simply being penalized in a "gotcha game" for having listed New York out of an abundance of caution given the Government's undefined use of the term "short duration" in the LCA form.

53.     It would be a manifest error and injustice to deny this Petition simply because AccuWeather was seeking to over-disclose that it has two locations—even if it swore under penalty of perjury that Mr. Natraj will not be performing any duties in NY.  And, AccuWeather was even seeking to inform USCIS that it intended to pay Mr. Natraj **even more** than he was owed in the event that travel to NY was ever required.  All that was required to be paid to Mr. Natraj was "expenses incurred in traveling to that location on the employer's business," but AccuWeather was attesting that it would actually *raise* Mr. Natraj's salary on any theoretical day that he might have had to travel to New York for work.

54.     The purpose of these regulations is to ensure that employers do the right thing by their employees, and pay their employees what they deserve.  Here, the employer was trying to do

more than what was required by law, and is being penalized for *over-disclosure* and for expressing

an intent to overpay its employee.   Surely, this is not a case that should lead to a denial.

## FIRST CAUSE OF ACTION

## JUDICIAL REVIEW UNDER THE APA

55.     Plaintiffs re-allege and incorporate by reference all of the allegations of paragraphs

1 through 51 above.

56.     Plaintiff Natraj was eligible to receive a change of status to H-1B status and

should have received an approval and a change of status as he had originally been approved via

an email on August 23, 2019.

57.     Defendants' reasoning in their August 23, 2019  denial decision that "it is not

evident that you are offering and will offer H-1B wages in compliance with the LCA submitted in

support of your H-1B petition," is demonstrably false and belied by pages of record evidence

providing clear evidence to the contrary that was not discussed by Defendants in their denial

decision.

58.     Moreover, there was no actual legal basis cited for Defendants' decision.  This

was all done without any explanation and without any supportable basis under the law.

59.     Defendants' actions were unlawful and Plaintiff's H-1B status should have been

awarded.  Defendants' failure to approve the petition violated the law under 8 CFR § 214.1(c)(4)

and is reviewable and should be overturned pursuant to the APA at 5 U.S.C. § 706.

## SECOND CAUSE OF ACTION

## RELIEF REQUESTED UNDER THE DECLARATORY JUDGEMENT

## ACT SEEKING APPROVAL OF PLAINTIFFS' CHANGE OF STATUS PETITION

60.     Plaintiffs re-allege and incorporate by reference all of the allegations of

paragraphs 1 through 56 above.

61.     Plaintiff Natraj alleges that he is still eligible for a change of status as an H-1B alien, and is eligible to extend his stay. The Plaintiff has not knowingly or intentionally violated his non-immigrant status before filing his H-1B extension request.

62.     Plaintiff Natraj avers that, as a matter of law, he has maintained his status and is eligible for a change of his status to H-1B status.  Plaintiffs further allege that Defendants' decision of August 23, 2019 was wrong as a matter of law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the Court:

(1) To enter judgement in the favor of Plaintiffs against the Defendants, finding the acts of the Defendants complained of herein are in violation of law, and issue an order requiring approval of PLAINTIFF'S I-129 request for change of status to H-1B status from October 1, 2019 to September 1, 2022.

(2) To enter a Judgment declaring that Defendants' denial of Plaintiffs' request for a change of Mr. Natraj's H-1B status is violative of the INA and its attendant regulations; violative of the Administrative Procedure Act; *ultra vires*; arbitrary and capricious, an abuse of discretion and not otherwise in accordance with law; and violative of due process;

(3) An order directing Defendants and their agents to issue immediately all necessary and appropriate documents to Plaintiffs to evidence the approval of their I-129 petition from October 1, 2019 to September 1, 2022;

(4) An order awarding Plaintiffs their attorneys' fees and costs; and

(5) An order granting such other relief as the Court may deem just, equitable, and proper including discovery into why Defendants improperly changed the decision in this case, who issued the order to change the decision, and on what basis was the decision changed.

14

Dated: September 3, 2019                    Respectfully submitted,

                                            /s/ Leon Fresco
                                            LEON FRESCO
                                            HOLLAND & KNIGHT LLP
                                            801 17th Street, NW, Suite 110
                                            Washington, DC 20006
                                            Telephone: (202)469-5129
                                            Fax: (202)955-5564
                                            Email: leon.fresco@hklaw.com